No. 75,359

In the Matter of JAMES MONROE MUNYON, V, *Respondent.*

(914 P.2d 574)

Opinion filed April 19, 1996.

*Stanton A. Hazlett,* deputy disciplinary administrator, argued the cause, and *Bruce E. Miller,* disciplinary administrator, and *Marty M. Snyder,* deputy disciplinary administrator, were on the formal complaint for the petitioner.

*James Monroe Munyon, V,* respondent, argued the cause pro se.

*Per Curiam:* This original proceeding in discipline was filed by the office of the Disciplinary Administrator against James Monroe Munyon, V, of Wichita, an attorney admitted to the practice of law in the State of Kansas.

Two separate complaints have been filed against the respondent, resulting in hearings before a panel of the Kansas Board for Discipline of Attorneys held June 23, 1994, and January 25, 1995, where, based on clear and convincing evidence, unanimous panels made the following findings of facts and conclusions of law:

### Case No. B5504

#### "FINDINGS OF FACT

"By clear and convincing evidence the panel unanimously finds that:

"1. The respondent is an attorney at law . . . .

"2. In the fall of 1989 Respondent was the attorney for the estate of Marjorie Halvestadt, Deceased. He received a check for $8,416.61 from John Ostrowski, which represented a worker's compensation settlement. The son of the decedent, the complainant in this case, was the only person who had any claim on the settlement proceeds. Respondent informed the complainant that he had placed the check in his trust account and that he would issue a check to the Complainant.

"3. Complainant did not receive a check from respondent for two weeks. On May 26, 1992 Complainant went to Respondent's office in Wichita. When he arrived, respondent gave him three checks, one dated May 26, 1992, in the amount of $3,000.00 and two checks totalling $5416.61 dated May 28 and June 5, 1992. A the complainant's request these last two checks were combined into a single check dated May 28, 1992.

"4. Complainant cashed the $3,000.00 check and deposited the other check into his bank account in Winfield. The second check was written on the personal account of respondent and was returned to complainant for insufficient funds.

"5. Upon confronting respondent about the insufficient funds check, complainant was given a new check which also would not clear.

"6. Complainant again met with respondent and at that meeting was given $2,000.00 in cash. Respondent told complainant he would get a loan to pay him the difference. As of the date of the hearing respondent had not paid complainant the remaining $3,436.61.

"7. Respondent is an admitted alcoholic who also has abused controlled substances. He is in dire financial straits with no possibility of paying restitution at this time. In addition to the judgment for punitive damages which the complainant has against him, respondent has numerous other judgments against him.

"8. Respondent's alcoholism was a contributing factor to his conduct, but it was not proven that there is a direct correlation between respondent's alcoholism and the violations by respondent.

"9. Respondent has not demonstrated a substantial period of successful rehabilitation.

## "CONCLUSIONS OF LAW

"Respondent's conduct violates the [Model] Rules of Professional Conduct Sections 1.15(a), 1.15(d)(1), 1.15(d)(2)(iii), 1.15(d)(2)(iv) [1995 Kan. Ct. R. Annot. 294], 8.4(c), 8.4(g) [1995 Kan. Ct. R. Annot. 340], and Supreme Court Rule 207 [1995 Kan. Ct. R. Annot. 202]."

## Case No. B5973

### "FINDINGS OF FACT

"By clear and convincing evidence the panel unanimously finds that:

. . . .

"2. Respondent was retained by complainant, Delbert E. Dugan, to represent complainant's son William A. Mott, in the event that charges were filed against Mr. Mott as a result of a car-train accident in which Mr. Mott was the driver of the car.

"3. Complainant paid respondent $2,500.00 in March of 1992. This sum was to cover a preliminary hearing and a three day trial if one should occur. There was no written fee agreement.

"4. On December 7, 1992, respondent's license to practice law was suspended for failure to register and complete the CLE requirements, and has not been reinstated. Respondent was placed on [disability] inactive status on April 5, 1993, [and] removed from that status on January 8, 1994, but his license was not reinstated.

"5. Respondent did not inform either complainant or Mott that he was suspended from practice or that he had been placed on [disability] inactive status.

"6. On February 24, 1994, William Mott was charged with Aggravated Vehicular Homicide pursuant to K.S.A. 21-3405a. Complainant then contacted respondent and was informed that respondent could no longer represent Mott because he was suspended from the practice of law.

"7. Respondent is an admitted alcoholic who also has abused controlled substances. He is in dire financial straits with no possibility of paying restitution at this time. In addition to the judgment for punitive damages which the complainant has against him, respondent has numerous other judgments against him.

"8. Respondent's alcoholism was a contributing factor to his conduct, but it was not proven that there is a direct correlation between respondent's alcoholism and the violations by respondent.

"9. Respondent has not demonstrated a substantial period of successful rehabilitation.

### "CONCLUSIONS OF LAW

"Respondent's conduct violates the [Model] Rules of Professional Conduct Sections 1.15(d)(2)(iii), 1.15(a), and Supreme Court Rule 207."

The recommended disposition of the panel in both cases is indefinite suspension from the practice of law. The panel opined that while the respondent has demonstrated excellent progress in his recovery from alcoholism, his dependency was so great that there had not been a sufficient period of sobriety to justify a lesser discipline.

Additionally, the panel recommended that in the event the respondent should ever seek reinstatement he should either have made restitution to the complainants or should have a plan for payment which is acceptable to the court.

The respondent did not take exceptions to the final reports, findings, conclusions, and recommendations of the panel.

The respondent personally appeared before the court, candidly admitted the violations, consented to the recommended sanctions, and asked only that his indefinite suspension be effective as of the date of the last panel hearing, which was January 25, 1995. The Disciplinary Administrator's Office concurred with this request.

The court, having considered the record herein and the reports of the hearing panels, concurs in the findings, conclusions, and recommendation of the panel.

IT IS THEREFORE ORDERED that James Monroe Munyon, V, be suspended indefinitely from the practice of law in the State of

Kansas effective as of January 25, 1995, in accordance with Supreme Court Rule 203(a)(2) (1995 Kan. Ct. R. Annot. 191).

IT IS FURTHER ORDERED that in the event the respondent should ever seek reinstatement, he should either have made restitution to the complainants or should have a plan for payment which is acceptable to the court.

IT IS FURTHER ORDERED that the respondent comply with Supreme Court Rule 218 [1995 Kan. Ct. R. Annot. 222], that the costs of these proceedings be assessed to the respondent, and this order be published in the official Kansas Reports.